UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| BRUCE ROSE, ) | |
| ) | |
| Plaintiff, ) | |
| ) | Civil Action No. |
| v. ) | 16-11558-FDS |
| ) | |
| BANK OF AMERICA as the ) | |
| successor-in-interest of ) | |
| COUNTRYWIDE MORTGAGE, ) | |
| OPTION ONE, and ) | |
| EASTSIDE MORTGAGE, ) | |
| ) | |
| Defendants. ) | |
| ) | |

### MEMORANDUM AND ORDER ON DEFENDANT BANK OF AMERICA, N.A.'S MOTION TO DISMISS

**SAYLOR, J.**

This is a dispute concerning a foreclosure. Plaintiff Bruce Rose has not made a payment on the mortgage loan on his home since 2007. Bank of America, N.A. ("BANA"), the mortgagee, now seeks to foreclose. Rose has brought suit against BANA and two others under Massachusetts law seeking to enjoin the foreclosure, recover compensatory damages, and obtain declaratory relief.

BANA has moved to dismiss the complaint in its entirety. For the following reasons, the motion to dismiss will granted in part and denied in part.

**I.  Background**

Unless otherwise indicated, the facts are set forth as alleged in the complaint.[1]

---

[1] On a motion to dismiss, a court may consider documents attached to or incorporated into the complaint, facts susceptible of judicial notice, concessions in a plaintiff's response to a motion to dismiss, and official public records. *Newman v. Krintzman,* 723 F.3d 308, 309 (1st. Cir. 2013). In addition, a court may consider all documents

A.      **Factual Background**

According to the complaint, Bruce Rose is a mentally disabled African-American man who lives at 22 Pompeii Street in Roxbury, Massachusetts ("property"). (Compl. ¶ 1). Defendant BANA is the successor-in-interest to Countrywide Bank, N.A. Defendants Eastside Mortgage and Option One were involved in the origination of the loan and mortgage that are the subject of this lawsuit.

In 2006, Rose refinanced the mortgage loan on his property on two separate occasions. First, on February 24, 2006, he refinanced the loan with Option One. (*Id.* ¶ 13). Second, on April 25, 2006, he refinanced with Countrywide. (*Id.* ¶ 14). He borrowed $439,000 from Countrywide in the second refinancing. (*Id.* ¶ 31). Eastside acted as the mortgage broker for both loans. (*Id.* ¶ 14). The note with Countrywide provides for a maturity date of May 1, 2036, and for acceleration of the loan in the event of default. (Note, Def. Ex. A ¶¶ 3(A), 7(C)). The complaint alleges that the loans were negative amortization loans with payments that increased to an unaffordable amount over time. (Compl. ¶¶ 31–32, 49).

The complaint alleges that Eastside, in collusion with the other defendants, falsified documents, made fraudulent statements to induce Rose to refinance, and forged Rose's signature on the mortgage applications, among other things. (*Id.* ¶¶ 15–25). It further alleges that defendants used predatory lending practices to target Rose to induce him to accept a loan that he could not afford. (*Id.* ¶¶ 8, 11).

About fourteen months after Rose refinanced his mortgage for the second time, he defaulted on the Countrywide loan. (*Id.* ¶ 43). He has not made payments on that loan since at

---

whose contents are alleged and the authenticity no party questions as "effectively merge[d] into the pleadings." *Beddall v. State St. Bank & Trust Co.*, 137 F.3d 12, 17 (1st Cir. 1998). Any facts considered by the Court that were not alleged in the complaint fall under one or more of those categories.

least July 1, 2007. (*Id.*). On September 18, 2009, he received a notice of a mortgage foreclosure and sale of the property. (*Id.* ¶ 44).

The complaint alleges multiple defects concerning the foreclosure process, including allegations that BANA does not hold the original note, has not made an offer to modify the loan, and has not recorded an affidavit certifying compliance with Mass. Gen. Laws ch. 244, § 35B in the registry of deeds. (*Id.* ¶¶ 42, 46–48).

### B.     Procedural Background

On September 22, 2009, Rose brought suit against the three defendants named here in Suffolk County Superior Court. (State Court Compl., Docket No. 9-3). That complaint alleged eleven counts arising out of the origination of the loans at issue here.

On February 25, 2011, Rose filed a voluntary chapter seven petition for bankruptcy. (*In re Rose*, Bankruptcy No. 11-11563 (Bankr. D. Mass. Feb. 25, 2011)). On May 24, 2011, the bankruptcy court filed an order granting a discharge to Rose. (Bankr. Docket No. 11). In February 2012, Rose moved to reopen the bankruptcy case in order to add the state-court lawsuit as an asset of the estate. (Bankr. Docket No. 15). The court granted that motion. (Bankr. Docket No. 20).

Thereafter, the trustee negotiated a settlement of the state-court lawsuit with two of the defendants in this case, BANA and Eastside. Under the terms of the settlement agreement, BANA and Eastside agreed to pay $16,500 to the bankruptcy estate. (Settlement Agreement ¶ 2, Bankr. Docket No. 45). In exchange, the bankruptcy estate, on behalf of Rose, agreed that he "unconditionally and irrevocably remises, releases, and forever discharges BANA and Eastside . . . from any and all suits, . . . claims, . . . grievances, and debts, of any nature whatsoever . . . concerning, relating to, or arising from the Loan, the Claims, and/or the Action,

including, but not limited to (a) all claims relating to or arising out of the origination, handling, processing, servicing, or administration of any aspect of the Loan; and (b) all claims that were, or could have been, asserted in the Action and/or any other proceeding concerning any aspect of the Loan." (*Id.* ¶ 2).

In addition, the agreement contained a covenant not to sue that provided that Rose would not "commence . . . any suit, arbitration or other proceeding . . . arising out of, relating to, or based upon, any claim released pursuant to the terms of this Agreement." (*Id.* ¶ 6).

On June 4, 2013, the trustee filed a motion in bankruptcy court seeking approval of the settlement agreement. (Bankr. Docket No. 45). Rose filed an objection to the proposed settlement agreement on the ground that the trustee was not entitled to "compromise future rights which were not raised in the complaint, and which would eliminate any defenses in the state court as to a wrongful foreclosure action based upon a lack of standing the alleged lender has." (Bankr. Docket No. 52). On July 10, 2013, the bankruptcy court held a hearing concerning the motion. At the hearing, the trustee represented that, despite the broad language of the settlement agreement, the agreement did not waive defenses that Rose may be entitled to raise concerning foreclosure. (Audio Recording of Hearing, Docket No. 59, *In re Rose*, Bankruptcy No. 11-11563 (Bankr. D. Mass. July 10, 2013) (on file)).

Counsel for BANA was also present at the bankruptcy hearing, and represented that the settlement agreement did not waive Rose's right to raise defenses to foreclosure, but instead addressed only claims concerning the origination of the loan. (*Id.*). Counsel further represented that although a foreclosure action against Rose had previously been commenced, that action had been stayed pending the resolution of the bankruptcy petition. (*Id.*). She stated that in light of that history, any "foreclosure based claims" raised by Rose in defense to a foreclosure action,

4

such as a claim based on improper notice of foreclosure or a claim that BANA failed to properly assign the loan, do not relate to the state action and would constitute "new claims" that "wouldn't have anything to do with the original civil claims." (*Id.*).

The bankruptcy court approved the settlement agreement subject to the representations by the parties that it applied only to the origination-based claims brought in the state-court action. (*Id.*). The Court entered an order granting the motion by the trustee to approve the settlement agreement, and further stating, "Hearing held. This does not affect foreclosure based claims." (Bankr. Docket No. 59).

On June 23, 2016, Rose filed the current action against defendants in Suffolk County Superior Court. On August 3, 2016, BANA removed the case to this Court. BANA has now moved to dismiss the case for failure to state a claim upon which relief can be granted pursuant to Fed. R. Civ. P. 12(b)(6).[2]

## II. Analysis

The complaint alleges four counts arising under state law: (1) a claim for a declaratory judgment and injunctive relief; (2) intentional infliction of emotional distress; (3) abuse of process; and (4) violation of Mass. Gen. Laws ch. 93A. The facts described in the complaint can be categorized into two groupings: (1) allegations concerning malfeasance in the origination of the loan (2) and allegations concerning BANA's failure to follow proper foreclosure procedures and lack of standing to foreclose. Plaintiff seeks injunctive relief to prevent defendants from foreclosing on the property, a declaratory judgment that plaintiff owns the property and that the notes are void, and damages of $10,000,000, trebled, pursuant to Mass. Gen. Laws ch. 93A.

---

[2] BANA originally filed its motion to dismiss on August 26, 2016. On October 4, 2016, the Court granted the motion because Rose had failed to file an opposition. On October 11, 2016, Rose filed an assented-to motion to re-open the case, which the Court granted.

### A. Standard of Review

On a motion to dismiss, the Court "must assume the truth of all well-plead[ed] facts and give the plaintiff the benefit of all reasonable inferences therefrom." *Ruiz v. Bally Total Fitness Holding Corp.*, 496 F.3d 1, 5 (1st Cir. 2007) (citing *Rogan v. Menino*, 175 F.3d 75, 77 (1st Cir. 1999)). To survive a motion to dismiss, the verified complaint must state a claim that is "plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). That is, "[f]actual allegations must be enough to raise a right to relief above the speculative level . . . on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Id.* at 555 (citations omitted). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 556). Dismissal is appropriate if the verified complaint fails to set forth "factual allegations, either direct or inferential, respecting each material element necessary to sustain recovery under some actionable legal theory." *Gagliardi v. Sullivan*, 513 F.3d 301, 305 (1st Cir. 2008) (quoting *Centro Médico del Turabo, Inc. v. Feliciano de Melecio*, 406 F.3d 1, 6 (1st Cir. 2005)).

### B. The Settlement Agreement

BANA contends that all of plaintiff's claims are barred by the terms of the June 4, 2013 settlement agreement.

Standing alone, the settlement agreement would clearly preclude plaintiff from bringing the claims alleged here. Again, that agreement states that "Mr. Rose . . . unconditionally and irrevocably remises, releases, and forever discharges BANA and Eastside . . . from any and all suits, . . . [and] claims . . . concerning, relating to, or arising from the Loan." However, the bankruptcy court approved the settlement agreement with the caveat that it did not affect

foreclosure-related claims. Accordingly, the settlement agreement, as approved, does not preclude Rose from raising such claims in this case. However, insofar as the complaint alleges claims concerning the origination of the loan, those claims are barred by the settlement agreement.

    C.    **Claim Preclusion and Issue Preclusion**

BANA further contends that plaintiff's claims are barred under the doctrines of claim preclusion and issue preclusion. Under Massachusetts law, the doctrine of issue preclusion "prevents relitigation of an issue determined in an earlier action where the same issue arises in a later action, based on a different claim, between the same parties or their privies." *Heacock v. Heacock,* 402 Mass. 21, 23 n.2 (1988). The doctrine of claim preclusion bars a party from bringing "an action based on the same claim that was the subject of an earlier action between the same parties or their privies." *Id.* Claim preclusion "makes a valid, final judgment conclusive on the parties and their privies, and bars further litigation of all matters that were or should have been adjudicated in the action." *Id.* at 152–53.

As set forth above, all of the claims at issue in the state action were settled by the settlement agreement. Therefore, the origination-based claims are precluded as having been previously litigated.

However, the analysis is different concerning the defenses to foreclosure that were not raised in the previous action. Counsel for BANA represented to the bankruptcy court that no foreclosure was pending against Rose at the time that the state action was commenced. She further represented that any defense Rose raised to a future foreclosure action based on standing would constitute a "new claim." Based on that representation, BANA cannot now claim that the standing-based foreclosure defenses "were or should have been adjudicated" in the prior state

7

action. *Id.* Accordingly, Rose's claims concerning BANA's lack of standing to foreclose are not barred by reason of claim preclusion.

### D. Surrender of Property in Bankruptcy

BANA further contends that the complaint should be dismissed because Rose surrendered the property in bankruptcy. A debtor seeking to discharge liabilities owed on secured property under chapter seven of the Bankruptcy Code may choose from among three options: (1) to reaffirm the debt; (2) to redeem the secured property; or (3) to surrender the property. 11 U.S.C. § 521(a)(6). According to BANA, the complaint must be dismissed because it does not allege that plaintiff reaffirmed or redeemed the debt, and no agreement to reaffirm the debt was entered into or filed with the bankruptcy court. However, because that argument appears to rely on facts outside of the four corners of the complaint, the complaint will not be dismissed on that ground alone.

### E. Merits of the Claims

#### 1. Declaratory Judgment

Count One seeks an entry of declaratory judgment that BANA is not entitled to foreclose on the property on three grounds: (1) that BANA does not possess and cannot produce the original note as required by Mass. Gen. Laws ch. 244, § 14; (2) that BANA's right to foreclose has expired; and (3) that BANA has failed to make a good-faith offer to modify the mortgage and file an appropriate certification with the registry of deeds in compliance with Mass. Gen. Laws ch. 244, § 35B.

##### a. Possession of the Note

The complaint alleges that the noticed foreclosure should be enjoined because BANA does not hold the original note on the property. Plaintiff contends that Mass. Gen. Laws ch. 244,

8

§ 14, which authorizes foreclosure under the statutory power of sale, requires a mortgagee to hold both the mortgage and note in order to foreclose.

In *Eaton v. Federal National Mortgage Association,* 462 Mass. 569, 585 (2012), the Massachusetts Supreme Judicial Court interpreted the term "mortgagee" under Mass. Gen. Laws ch. 244, § 14 to mean "a mortgagee who also holds the underlying mortgage note." Thus, the court held that in order to effect a valid foreclosure by sale, a mortgagee must hold the underlying note or be an authorized agent of the note holder. *Id.* at 586. The court recognized that at the time the opinion was issued, "lawyers and others who certify or render opinions concerning real property titles have followed in good faith a different interpretation of the relevant statutes, *viz.*, one that requires the mortgagee to hold only the mortgage, and not the note." *Id.* at 588. In light of that fact, the court stated that the decision would only apply prospectively, "only to mortgage foreclosure sales for which the mandatory notice of sale has been given after the date of this opinion [of June 22, 2012]." *Id.* at 588–89.

Here, the complaint alleges that Rose received the notice of a mortgage foreclosure and sale on September 18, 2009. Under Massachusetts law in effect at that time, BANA needed to hold only the mortgage, and not the note, in order to effect a valid foreclosure by sale. Thus, the claim that BANA may not foreclose because it does not hold the original note on the property is without merit.

    b.  **<u>Obsolete Mortgages Statute</u>**

The complaint alleges that under Mass. Gen. Laws ch. 260, § 33, BANA is time-barred from foreclosing on the property.

Under Massachusetts's Obsolete Mortgages statute, Mass. Gen. Laws ch. 260, § 33, a foreclosure proceeding may not be commenced more than five years "from the expiration of the

9

term or from the maturity date" of the loan. The note provides for a maturity date of May 1, 2036. Plaintiff contends that under the Obsolete Mortgages Statute, the limitations period begins to run, not from the date provided by the note, but from the date the loan became due and payable: here, in 2007, when repayment was accelerated following plaintiff's default.

At least four judges in this district have rejected the argument plaintiff raises here. *See Junior et al v. Wells Fargo Bank, N.A. et al*, 2017 WL 1199768, at *1 (D. Mass. Mar. 30, 2017) (collecting cases). Those cases have held that the language of the Obsolete Mortgages statute does not support plaintiff's position because "[a]lthough the statute discusses the use of extensions to lengthen the mortgage period, it provides no guidance as to decreasing the enforceable time period or as to the time period being affected by acceleration of the note." *Id.* (quoting *Hayden v. HSBC Bank USA, N.A.*, 2016 WL 5746357, at *3 (D. Mass. Sept. 30, 2016)). In addition, those cases have found that the over-all policy of the statute is to "streamline conveyancing and provide remedies to clear title blemished by mortgages," which is not served by "changing the enforceable period of the mortgage as a result of acceleration on the note." *Id.* (quoting *Hayden*, 2016 WL 5746357, at *3).

This Court agrees with that analysis. The maturity date expressly provided by the note is the relevant maturity date for purposes of the Obsolete Mortgages statute. Here, that date has not yet come to pass and therefore BANA is not time-barred from bringing a foreclosure action.

    c. **Failure to Comply with Mass. Gen. Laws ch. 244 § 35B**

      (1) **Failure to Make Offer to Modify**

Plaintiff further contends that BANA must make a good-faith offer to modify the mortgage before proceeding with a foreclosure under Mass. Gen. Laws ch. 244, § 35B.

Under Mass. Gen. Laws ch. 244, § 35B, a lender holding a "certain mortgage loan" must

review the mortgage loan for a possible modification before publishing a statutory notice of foreclosure sale. The statute defines a "certain mortgage loan" as a loan that is secured by a mortgage on an owner-occupied residential property and that has at least one characteristic enumerated by the statute. Mass Gen. Laws ch. 244, § 35B(a). Such a characteristic includes, among other things, an introductory interest rate for a period of three years or less where that rate is at least 2% lower than the fully indexed rate, an interest-only payment option for any length of time except for open-ended home equity loans and construction loans, and a payment option that is less than the principal and interest fully amortized over the life of the loan (in other words, the loan is a negative amortization loan). *See id.* The complaint here alleges that the plaintiff's loans were negative amortization loans. (Compl. ¶ 32).

Plaintiff contends that section 35B requires a lender to make an offer to modify such a loan prior to foreclosing. To the contrary, while the statute provides that a lender must offer to modify some loans that qualify as "certain mortgage loans," that requirement does not extend to all "certain mortgage loans." Rather, "prior to causing publication of notice of a foreclosure sale," a lender must analyze the net present value of a potential modified mortgage loan based on affordable monthly payments and compare it with the anticipated recovery that would result from a foreclosure sale. *Id.* at § 35B(a)(2). Where the value of the modified mortgage loan does not exceed the value of the anticipated foreclosure sale, the lender need not offer a modified mortgage loan. *Id.* at § 35B(b)(iv). The complaint does not plead any factual allegations as to whether a modification was necessary here. Accordingly, it fails to state a plausible claim for relief on the basis that no modification was offered.

### (2) Failure to Follow Certification Procedure

Mass. Gen. Laws ch. 244, § 35B (which was enacted in 2012, after the initiation of

11

foreclosure proceedings in this case) further requires that a mortgagee submit an affidavit with the registry of deeds certifying compliance with the statute prior to publishing a notice of a foreclosure sale. *See* Mass. Gen. Laws ch. 244, § 35B(f). The complaint alleges that BANA has not recorded such a notice. (Compl. ¶ 79). BANA's motion to dismiss does not address that claim. Accordingly, the court will defer consideration of the claim. The motion to dismiss will therefore be denied without prejudice to its renewal with respect to that discrete issue.

### 2.     **Intentional Infliction of Emotional Distress**

The complaint alleges a count for intentional infliction of emotional distress. In substance, the complaint alleges that "illegal actions taken by the Defendants and its [sic] counsel to reopen a closed case and violate this Court's order have cause[d] excessive stress to the plaintiff." (Compl. ¶ 85). The complaint does not contain any factual allegations to support that claim. Indeed, it is not clear as to what "closed case" the complaint refers. Again, any claim arising out of the origination of the loan is barred by the settlement agreement. Read to exclude the origination-based claims that were settled, the complaint fails to allege any facts to support a claim for intentional infliction of emotional distress. That claim will be dismissed.

### 3.     **Abuse of Process and Chapter 93A**

The complaint alleges that BANA's attempt to foreclose on the property without holding the original note gives rise to separate claims for abuse of process and unfair and deceptive practices in violation of Mass. Gen. Laws ch. 93A. Again, under the law in effect at the time that BANA initiated foreclosure proceedings, it was not required to hold the note in order to foreclose. Accordingly, the claims for abuse of process and under chapter 93A will be dismissed.

## III. Conclusion

For the foregoing reasons, BANA's motion to dismiss will be GRANTED in part and DENIED in part. Specifically, the motion to dismiss will be granted with respect to all claims except the discrete claim that BANA has failed to file a certification demonstrating compliance with Mass. Gen. Laws ch. 244, § 35B with the registry of deeds.

**So Ordered.**

Dated: April 17, 2016

/s/ F. Dennis Saylor
F. Dennis Saylor IV
United States District Judge